UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LANDERS WILSON,
    Petitioner,

v.

UNITED STATES OF AMERICA,
    Respondent.

No. 3:16-cv-1791 (SRU)

### RULING AND ORDER ON PETITIONER'S
### MOTION TO VACATE, CORRECT OR SET ASIDE SENTENCE

On October 31, 2016, *pro se* petitioner Landers Wilson, currently imprisoned at Federal Correctional Institution Fort Dix in Fort Dix, New Jersey, filed a motion to vacate, set aside, or correct his sentence ("habeas petition"), pursuant to 28 U.S.C. § 2255.[1] Petition (doc. 1). Wilson challenges his conviction and sentence, arguing that: (1) there was no factual basis for his guilty plea in violation of Rule 11(b)(3) of the Federal Rules of Criminal Procedure; (2) the court improperly failed to evaluate Wilson's competence to plead, and accordingly failed to grant Wilson a downward departure for diminished capacity in his Sentencing Guidelines calculations, *see* U.S.S.G. § 5K2.13; and (3) Wilson's counsel provided him with ineffective assistance of counsel for failing to raise either of those two arguments in the plea colloquy and at sentencing. The government asserts that Wilson's arguments are foreclosed by his valid appeal waiver, and moreover that his claims would nevertheless fail on the merits. I agree—based on the entire

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part that "a petitioner must file a petition for habeas relief within one year of the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f). "For the purpose of starting the clock on § 2255's one-year limitation period, a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction," *Clay v. United States*, 537 U.S. 522, 525 (2003)—that is to say, 90 days after the entry of the appellate court's judgment. *See* Sup. Ct. R. 13(1). Wilson timely filed his petition one year and 78 days after the Second Circuit entered its order affirming the judgment in his criminal case.

record and for the reasons set forth in this ruling, there is no need to hold a hearing in this case and Wilson's petition is **denied**.

## I. Standard of Review

Section 2255 provides a prisoner in federal custody an opportunity to challenge the legality of his or her sentence. To obtain relief under section 2255, the petitioner must show that his or her prior sentence was invalid because: (1) it was imposed in violation of the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) it exceeded the maximum detention authorized by law; or (4) it is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The standard is a high one; even constitutional errors will not be redressed through a section 2255 petition unless they have had a "substantial and injurious effect" that results in "actual prejudice" to the petitioner. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal citations omitted); *Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht*'s harmless error standard to section 2255 petition).

A federal prisoner may not use a section 2255 petition to relitigate questions that were expressly or impliedly resolved during a direct appeal, absent "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2013) (internal citations omitted); *see also United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001); *United States v. Munoz*, 143 F.3d 632, 637 (2d Cir. 1998) ("A motion under § 2255 is not a substitute for an appeal."). A petitioner is also barred from bringing a claim on habeas review that was not properly raised on direct review unless the petitioner is able to show "cause and actual prejudice" or "actual innocence." *See Bousley v. United States*, 523 U.S. 614, 622 (1998); *Reed v. Farley*, 512 U.S. 339, 354 (1994).

A petitioner may raise a claim of ineffective assistance of counsel that was not raised previously at trial or on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003). A petitioner claiming ineffective assistance of counsel "must show that (1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Strickland*, 466 U.S. at 687–88 (1984)). That does not mean, however, that every perceived error or questionable decision by counsel entitles a petitioner to relief. There is a "strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." *Strickland*, 466 U.S. at 689. The threshold for an ineffective assistance claim is high, and courts have "declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox, or downright ill-advised." *Tippins v. Walker*, 77 F.3d 682, 686 (2d Cir. 1996). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citing *Strickland*, 466 U.S. at 690).

Under section 2255, a petitioner is entitled to a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "Mere generalities or hearsay statements will not normally entitle the applicant to a hearing . . . . The petitioner must set forth specific facts which he is in a position to establish by competent evidence." *Dalli v. United States*, 491 F.2d 758, 760–61 (2d Cir. 1974) (citations omitted). In the absence of supporting facts, the court may resolve a petitioner's claims without a hearing. *See id.*

**II.     Background**

On January 25, 2013, a grand jury returned an indictment charging Wilson with a single count of conspiracy to possess with intent to distribute, and conspiracy to distribute 280 grams or more of a mixture and substance containing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. *See United States v. Wooten, et al.*, No. 3:13-cv-18 (SRU) (D. Conn. Jan. 25, 2013) (doc. 14). Thirteen other co-defendants were named in the same indictment on various other counts. On July 9, 2013, Wilson was released on bond with special conditions that he participate in a residential substance abuse treatment program operated by the Salvation Army. At the bond hearing, Wilson's counsel noted that Wilson had a mental heath diagnosis that "basically" amounted to depression, for which he had previously self-medicated with substantial substance abuse, and which was then being treated by physicians at his pretrial detention facility with a combination of Zoloft and "Xylo."[2] Bond Tr. (3:13-cr-18, doc. 510).

On July 16, 2013, pursuant to a written plea agreement, Wilson pleaded guilty to a lesser-included offense: conspiracy to possess with intent to distribute 28 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. (3:13-cr-18, doc. 174). The plea agreement contained an appeal waiver in which Wilson agreed not to collaterally challenge his sentence or conviction if his sentence did not exceed 108 months' imprisonment, a four-year term of supervised release, and a fine of $15,000.[3] Plea Agreement (3:13-cr-00018, doc. 453).

---

[2] Zoloft is a commonly prescribed anti-depressant. The bond hearing transcript states that Wilson's second medication was called "Xylo," but also includes a notation indicating that was a phonetic spelling. There does not appear to be a drug on the market under that name, however, and neither party has sought to correct that transcript, nor have they provided Wilson's medical records for the relevant period. I accordingly assume that the second prescription was also an anti-depressant.
[3] The waiver reads as follows:

4

Although the plea agreement included a paragraph referring to written stipulation, no such attachment was included.

At the plea colloquy, in response to my questions, Wilson stated that his mind was clear, that he understood the proceedings, and that he understood the implications of entering a guilty plea. Plea Tr. at 5–11 (3:13-cr-18, doc. 35). Wilson's counsel also stated that he had no concerns regarding Wilson's competence to plead. *Id.* at 6.

The parties noted the omission of the written stipulation referred to in the written plea agreement, and agreed to cross out the paragraph referring to that stipulation in order to avoid confusion. *Id.* at 26–27. The government subsequently described the evidence on which it would have relied to prove that Wilson had committed the offense of conviction at trial. *Id.* at 34–37. Wilson's counsel made a minor correction to that account, and Wilson confirmed that the government's account was accurate "for the most part." *Id.* at 37. I then discussed the elements of the offense of conviction with Wilson in further detail as follows:

> The Court: . . . Did you agree with at least one other person that you would be involved with possession with intent to distribute at least 28 grams of crack cocaine?
>
> The Defendant: Yes.
>
> The Court: All right. So you knowingly and voluntarily did that?

---

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction and sentence. The defendant agrees not to appeal or collaterally attack in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241, the conviction or sentence imposed by the Court if that sentence does not exceed 108 months, a four year term of supervised release, and a $15,000 fine, even if the Court imposes such a sentence based on an analysis different from that specified above. Similarly, the Government will not appeal a sentence imposed within or above the stipulated sentencing range. The Government and the defendant agree not to appeal or collaterally attack the Court's imposition of a sentence of imprisonment concurrently or consecutively, in whole or in part, with any other sentence. The defendant acknowledges that he is knowingly and intelligently waiving these rights. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver.

>   The Defendant: Yes.
>
>   The Court: And you understand that the goal of that agreement or conspiracy was to possess with intent to distribute crack cocaine?
>
>   The Defendant: Yes.
>
>   The Court: Cocaine base and crack cocaine are the same thing, right?
>
>   The Defendant: (Nodding in the affirmative).
>
>   The Court: And the quantity involved in the agreement was at least 28 grams?
>
>   The Defendant: Yes.

*Id.* at 38.

On September 12, 2014, I sentenced Wilson to the mandatory minimum term of 60 months of imprisonment, four years of supervised release, and a $100 special assessment. Judgment (3:13-cr-18, doc. 475). On November 5, 2014, Wilson timely filed a notice of appeal to the Second Circuit Court of Appeals. (3:13-cr-18, doc. 483). Wilson's appellate counsel filed a motion pursuant to *Anders v. California*, 215 U.S. 738 (1967), seeking to withdraw from the case, and the government cross-moved for dismissal on the basis of the appeal waiver in the plea agreement. On August 24, 2015, the Second Circuit Court of Appeals granted appellate counsel's *Anders* motion and the government's motion to dismiss the appeal. *See Wilson v. United States*, (Docket 14-4207, doc. 68). On October 31, 2016, Wilson timely filed the instant petition.

### III.    Discussion

Wilson challenges his conviction and sentence, alleging that his plea was not knowing and voluntary and therefore had no legal basis, and that he was provided ineffective assistance of counsel. Because the sentence that Wilson received falls within the scope of the appeal wavier in his plea agreement, I must first consider whether his allegations are sufficient to overcome that

6

waiver. I find that they are not. Moreover, even if I were to reach Wilson's substantive arguments, they would fail on the merits.

    A.  The Appeal Waiver

Wilson does not dispute that he entered into a plea agreement that contained an appeal waiver. Nor can he dispute that the appeal waiver was triggered when Wilson was sentenced within the agreed-upon Guidelines range. "It is by now well-settled that a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable." *United States v. Djelevic*, 161 F.3d 104, 106 (2d Cir. 1998). A defendant who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence may not, under any circumstance, appeal the merits of a sentence conforming to the agreement. *Id.* at 107 (internal citations omitted).

In *United States v. Gomez-Perez*, 215 F.3d 315 (2d Cir. 2000), the Second Circuit observed that a defendant may challenge a sentence notwithstanding an appeal waiver if he is able to show that certain exceptional circumstances obtained, including, in relevant part, that "the waiver was not made knowingly, voluntarily, and competently." *Id.* at 319. The *Gomez-Perez* Court noted, however, that exceptions to the presumption of the enforceability of a waiver "occupy a very circumscribed area of our jurisprudence," so much so that waiver provisions have been upheld "even in circumstances where the sentence was conceivably imposed in an illegal fashion or in violation of the Guidelines, but yet was still within the range contemplated in the plea agreement." *Id.*

Wilson does not specifically allege that he did not knowingly waive his appeal rights, but because he is proceeding *pro se*, I construe his petition liberally and accordingly assume that argument is an implicit component of his claim that he was not competent to plead guilty or that

7

the plea colloquy was otherwise defective. *See Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (instructing that "[p]ro se complaints must be construed liberally and interpreted to raise the strongest arguments that they suggest") (internal quotation marks and citation omitted).

I must examine the record to decide whether an evidentiary hearing is necessary to determine if Wilson's waiver was both knowing and voluntary. In conducting that examination, I am "entitled to accept a defendant's statements under oath at a plea allocution as true." *United States v. Maher*, 108 F.3d 1513, 1521 (2d Cir. 1997) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)); *see also United States v. Rivernider*, 828 F.3d 91, 105 (2d Cir. 2016) (observing that "sworn testimony given during a plea colloquy carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made") (internal quotation marks and citations omitted). At the plea colloquy, I discussed the terms of the appeal waiver with Wilson and advised him that he was waiving his right to appeal or file a habeas corpus petition if he received a sentence within the agreed-upon range. Plea Tr. at 31–32. In response to my questions, Wilson indicated that he understood the terms of the waiver and its implications in his case, and further stated that his agreement to enter into the waiver was voluntary. *Id.*[4] The record indicates that Wilson subsequently signed the plea

---

[4] The entire exchange was as follows:

> The Court: Now, there's an important provision at the bottom of page four that carries onto page five and that is the section called waiver of right to appeal or collaterally attack conviction and sentence.
>
> If you sign this agreement, then you would be agreeing that you will not appeal- or file a habeas corpus petition with respect to either any problem you have with the conviction or any problem you have with the sentence. Okay? Do you understand?
>
> The Defendant: Yes.

agreement. *Id.* at 33. Wilson's argument suggesting that he was not mentally competent to plead guilty would, if successful, potentially call into question the enforceability of the waiver; however, as discussed further below, I find that Wilson has not set forth sufficient specific facts to raise a genuine question about his competence during the criminal proceedings.

Thus, taking Wilson's statements to be true, the record clearly indicates that his entry into the waiver was knowing and voluntary and the waiver is therefore an enforceable bar to this petition. Even if Wilson's petition were not barred by an enforceable appeal waiver, however, it would nevertheless fail on the merits. Because Wilson's ineffective assistance arguments overlap with his substantive arguments, those claims are addressed together.

B. <u>The Factual Basis for the Plea</u>

Wilson argues that his conviction should be vacated because it was entered in violation of Rule 11(b)(3) of the Federal Rules of Criminal Procedure, which requires that "before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Although "Rule 11 imposes strict requirements on what information the district courts must convey and determine before they accept a plea, it does not tell them precisely how to perform

---

The Court: As a practical matter, if you sign this agreement and you receive the sentence that triggers that waiver, which would be 108 months in prison or less, four years of supervised release or less, and a 15,000-dollar fine or less, if those conditions are met, then as a practical matter your case is over in any court. Do you understand?

The Defendant: Yes.

The Court: You couldn't appeal, you couldn't file a habeas corpus, either about your conviction or about your sentence. Okay?

The Defendant: Yes.

The Court: And is that your voluntary agreement?

The Defendant: Yes.

9

this important task in the great variety of cases that come before them." *Tellado v. United States*, 799 F. Supp. 2d 156, 174 (D. Conn. 2011), *aff'd*, 745 F.3d 48 (2d Cir. 2014) (quoting *United States v. Torrellas,* 455 F.3d 96, 102 (2d Cir. 2006)).

Wilson's argument is based on the absence of a written stipulation accompanying the plea agreement. Rule 11(b)(3) does not require that the factual basis be presented to the court in any particular format, however; instead, it "simply requires that the facts [on the record] fit the elements of the offense." *United States v. Rodriguez*, 501 F. App'x 86, 91 (2d Cir. 2012) (citing *United States v. Garcia*, 587 F.3d 509 (2d Cir. 2009), and *United States v. Smith*, 160 F.3d 117, 121 (2d Cir. 1998)); *see also Maher*, 108 F.3d at 1524–25 ("[S]o long as the facts relied on are placed on the record at the time of the plea, the district court, in determining whether there was a factual basis for the plea, is free to rely on any facts at its disposal . . . .") (internal quotation marks and citation omitted).

In the present case, at the plea colloquy, the government provided an extensive discussion of the evidence it would have presented to demonstrate Wilson's guilt at trial, to which Wilson agreed in large part. *See* Plea Tr. at 34–37. In response to my questions, Wilson then explicitly agreed that his conduct met the elements of the offense of conviction. *Id.* at 38. Thus, by the time that I accepted Wilson's guilty plea, there was ample factual basis in the record to support it, and because there was such a basis, it was not ineffective assistance for Wilson's counsel to fail to raise a frivolous Rule 11 objection.

C. <u>Diminished Capacity Claims</u>

Wilson's petition may be construed as making two overlapping claims related to his alleged diminished capacity. First, he argues that he was entitled to, and his counsel should have moved for, a downward departure in his Guideline calculations pursuant to section 5K2.13. As

10

the government points out, however, Wilson received the mandatory minimum sentence for the count of conviction, and a section 5K2.13 departure would not have allowed me to go below that statutory requirement. *See Soler v. United States*, 2007 WL 1297143, at *3 (D. Conn. May 1, 2007) ("It is a fundamental proposition that a district court does not have general discretionary authority to downwardly depart from statutory minimum penalties prescribed for the crime of conviction."); *see also United States v. Medley*, 313 F.3d 745, 749 (2d Cir. 2002) (observing that deviations from the statutory mandatory minimum are only permitted if the procedural requirements of 18 U.S.C. §§ 3553(e) and (f) are met). Accordingly, Wilson's counsel's failure to request such a departure and my failure to consider it could have had no effect on Wilson's ultimate sentence.

Wilson's petition may also be construed to argue that his plea was not valid because of his diminished mental capacity, and that his counsel accordingly erred in failing to request a competency evaluation. Although competency may be raised for the first time on collateral review, *see United States v. Cannon*, 310 F.2d 841, 843 (2d Cir. 1962), "[d]istrict courts within the Second Circuit have routinely denied § 2255 motions that allege counsel was ineffective for failing to seek a psychiatric evaluation, where the movant offered nothing more than the conclusory assertion that expert testimony would have made a difference in the outcome of his case." *Cromitie v. United States*, 2017 WL 1383982, at *5 (S.D.N.Y. Apr. 7, 2017) (collecting cases). Indeed, a "'bald allegation of mental incompetence'" is insufficient to warrant even a hearing, let alone demonstrate that the absence of such an evaluation constituted prejudice. *Newfield v. United States*, 565 F.2d 203, 207 (2d Cir. 1977) (quoting *United States v. Miranda*, 437 F.2d 1255 (2d Cir. 1971)).

11

Wilson has offered only such conclusory assertions in the present case. In support of his competency arguments, he cites to statements by counsel at his bond hearing indicating that he had a history of depression and substance abuse; as the government points out, however, he offers no evidence that he was in fact incompetent during any part of his criminal proceedings, nor that a psychiatric evaluation would have had any impact on the outcome of his case. Thus, Wilson has failed to show that his conviction and sentence were unlawfully imposed in the absence of an evaluation or that his counsel was constitutionally ineffective for failing to request one.

### IV.    Conclusion

Wilson has failed to meet the requirements for a successful section 2255 petition. Accordingly, his petition is DENIED. Because Wilson has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue. The Clerk shall enter judgment and close the file.

So ordered.

Dated at Bridgeport, Connecticut, this 18th day of July 2017.

      /s/ Stefan R. Underhill
       Stefan R. Underhill
       United States District Judge